IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD CLAWSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No.   11-294 |

AMBROSE, Senior District Judge

# OPINION
# and
# ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 11 and 13). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 12 and 14). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion (Docket No. 13) is denied and Plaintiff's Motion (Docket No. 11) is granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with the Opinion that follows.

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff applied for SSI and DIB on July 11, 2007. In both applications, he alleged that since November 1, 2006, he had been disabled due to diabetes, high blood pressure,

and a heart condition.  (R. 134-40, 181, 185).  He reported last working on November 1, 2006.  (R. 185).  The state agency denied his claim initially, and he requested an administrative hearing.  (R. 68, 79).  Administrative Law Judge ("ALJ") William H. Hauser held a hearing on September 23, 2009, at which Plaintiff was represented by counsel. (R. 30-62).  Plaintiff appeared at the hearing and testified on his own behalf.  Id.  A vocational expert also was present at the hearing and testified.  (R. 53-60).  In a decision dated February 12, 2010, the ALJ found that Plaintiff was not disabled under the Social Security Act because he was able to perform a significant number of jobs in the national economy.  (R. 17-25).  The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (R. 1-6).  After thus exhausting his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment.  (Docket Nos. 11 and 13).  The issues are now ripe for my review.

## II.  LEGAL ANALYSIS

### A.  STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998).   Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.

1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. **WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT DID NOT MEET A LISTING IN APPENDIX I, SUBPART P, REGULATION 4, SPECIFICALLY 12.05 (MENTAL RETARDATION)**

Plaintiff takes issue with the ALJ's step three analysis. In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Secretary of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Commissioner, 220 F.3d 112, 119 (3d Cir. 2000). The Third Circuit has held that:

> Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings which are "inquisitorial rather than adversarial" and in which "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."

Burnett, 220 F.3d at 120, n.2 (quoting Sims v. Apfel, 530 U.S. 103 (2000)).

Plaintiff argues that the ALJ failed to acknowledge the record evidence concerning his IQ scores and, therefore, failed to evaluate appropriately whether he had a condition that met or equaled Listing 12.05 (mental retardation). See 20 C.F.R. pt. 404, subpt. P, app.1 §§ 12.05. After careful consideration, I agree.

> Listing 12.05 - Mental Retardation provides:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app.1 § 12.05.

As the disjunctive language of the Listing indicates, the required level of severity for this disorder is met when the requirements in both A, B, C *or* D of the Listing are satisfied. In this case, Plaintiff contends that the ALJ failed to address whether he satisfies Part C of the Listing. Under the criteria in 12.05(C), a claimant is presumptively disabled if: "(a) he is mentally retarded, as evidenced by an IQ between 60 and 70, and has been so since before the age of 22; and (b) has another impairment, other than the mental retardation, that imposes an additional and significant work-related limitation of function." Williams v. Sullivan, 970 F.2d 1178, 1184 (3d Cir. 1992); see also Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003); McDonnell v. Astrue, Civ. A. No. 10-222, 2010 WL 3938259, at *4 (W.D. Pa. Oct. 5, 2010) (a claimant is disabled under 12.05(C) if he has an IQ between 60 and 70; has an additional severe impairment; and such conditions have been in existence prior to the claimant reaching age 22).

Here, there is relevant record evidence supporting prong one of Listing 12.05(C). Specifically, a Psychological Evaluation Report prepared by school psychologist John W. Herdman, M. Ed., indicates that Herdman evaluated Plaintiff's intellectual functioning in 1982 (when Plaintiff was fifteen years old). (R. 256-258). During the course of that evaluation, Herdman administered two IQ tests: the Wechsler Intelligence Scale for Children - Revised in the Spring of 1982 and the Stanford-Binet Intelligence Scale, Form L-M in the Fall of 1982. Id. Although Plaintiff's IQ measured above 70 on the Wechsler test, his IQ was assessed at 68 (third percentile) on the Stanford-Binet test. Id.; see also R. 180. Herdman noted that "[t]he results of the Stanford-Binet are somewhat lower than the WISC-R but are consistent with the low average verbal reasoning ability." (R. 257).

The 1982 Stanford-Binet IQ test is probative of Plaintiff possibly meeting the first criterion of Listing 12.05(C) because it is evidence of an IQ score of between 60 and 70 assessed prior to age 22.[1]  Although the ALJ discussed Listing 12.05 in his Opinion, however, the Opinion does not mention this IQ score or otherwise discuss the specific requirements of part C of the Listing. (R. 20-21). Rather, the Opinion focuses on the introductory language of the Listing, *i.e.*, that mental retardation refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." Citing Plaintiff's current activities of daily living and social functioning, among other things, the ALJ found that "[t]here is no evidence of any deficits in adaptive behavior" and that Plaintiff's borderline intellectual functioning is not a severe impairment. (R. 20-21).

It is well-established that "[i]f an ALJ fails to mention probative evidence, then a reviewing court will not be able to determine whether the ALJ's decision is supported by substantial

---

[1] The parties do not dispute that Plaintiff's other severe impairments (diabetes mellitus with diabetic neuropathy and obesity) satisfy the second criterion of the Listing, *i.e.*, another impairment, other than the mental retardation, that imposes an additional and significant work-related limitation of function.

6

evidence under § 405(g)." McDonnell, 2010 WL 3938259, at *6 (citing cases). In this case, because the ALJ failed to discuss Plaintiff's IQ score of 68 or even mention the specific requirements of Listing 12.05(C) in his Opinion, I am unable to review whether the ALJ's decision that Plaintiff's borderline intellectual functioning was not severe and/or that it did not meet the criteria of Listing 12.05 is supported by substantial evidence.

Defendant's argument that the ALJ's failure to discuss the IQ scores is "harmless error" is without merit.[2] Even if the ALJ could have discredited the IQ score for some or all of Defendant's stated reasons, he did not do so. Because the ALJ failed completely to discuss the IQ scores, I have no way of knowing whether he considered and rejected the scores; whether he overlooked the scores; or whether he ignored the scores entirely. I simply cannot speculate as to whether the ALJ considered the scores and, if he did not, how those scores may have influenced his findings. Although the ALJ was free to discuss the weight he decided to give to any of Plaintiff's IQ scores or to reject scores that were inconsistent with the record, his complete failure to address an IQ score within the mental retardation range cannot be affirmed. McDonnell, 2010 WL 3938259, at *6; see also Fargnoli v. Massanari, 247 F.3d 34, 43-44 (3d Cir. 2001) ("The ALJ makes no mention of any of these significant contradictory findings, leaving us to wonder whether he considered and rejected them, considered and discounted them, or failed to consider them at all."); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981) ("The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was error.").

---

[2] Among other things, Defendant contends that the ALJ's failure to mention the IQ scores is harmless because the ALJ found that there was no evidence of deficits in Plaintiff's adaptive behavior. Therefore, Defendant reasons, Plaintiff cannot meet Listing 12.05(C) regardless of his IQ scores. Def.'s Br. (Docket No. 14) at 19. Defendant also attacks the Stanford-Binet IQ test, contending that a Stanford-Binet deviation IQ score is not the type of IQ test contemplated by Listing 12.05(C); that Plaintiff's IQ score was nevertheless consistent with low-average verbal reasoning ability; and that Plaintiff's WISC-R scores were above the 60-70 range. Id. at 19-21.

The ALJ's failure to address Plaintiff's IQ scores or to determine whether Plaintiff met Listing 12.05(C) necessitates a remand to the Commissioner for further proceedings. On remand, the ALJ should provide his interpretation of the record on this issue, develop the record further, and make a finding as to whether Plaintiff meets Listing 12.05(C).

**C.   WHETHER THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY FINDING AND CONCOMITANT HYPOTHETICAL QUESTION TO THE ALJ ERRONEOUSLY FAILED TO INCLUDE THE LIMITATION TO ONLY OCCASIONAL FEELING AND HANDLING**

Plaintiff also argues that the ALJ erred at step five of the sequential evaluation process because his hypothetical question to the vocational expert failed to include that Plaintiff was limited to only occasional feeling and handling. Pl.'s Br. (Docket No. 12) at 6-8. Specifically, after the administrative hearing, the ALJ scheduled a post-hearing consultative examination of Plaintiff by Christopher Begley, M.D. (R. 60-61, 397-399). After the examination, Dr. Begley completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" concerning Plaintiff. (R. 401-404). Among other things, Dr. Begley, noting Plaintiff's peripheral neuropathy, opined that Plaintiff's physical functioning with respect to feeling and handling was affected by his impairment. (R. 403). In his Opinion, the ALJ discussed Dr. Begley's report and stated that "[t]he opinion of Dr. Begley has been considered and given great weight in that it is consistent with the longitudinal medical records, the claimant's activities of daily living and was based on a thorough examination." (R. 23). The ALJ did not state that he disagreed with or rejected any portions of Dr. Begley's report. As Plaintiff notes, however, the limitations the ALJ set forth in his hypothetical question to the vocational expert (posed prior to the consultative examination) did not include language specifically limiting Plaintiff's "feeling and handling." (R. 56-61). Plaintiff contends that this omission renders the hypothetical question and the ALJ's RFC finding defective.

Defendant counters that although the ALJ's RFC finding does not specifically mention feeling and handling, the hypothetical question posed to the VE included a substantially equivalent limitation. Def.'s Br. at 10-13.  Specifically, the question focused on Plaintiff's neuropathy and contained numerous related limitations including a limitation to only occasional "gross and fine dexterity." (R. 56).  Under this hypothetical, the VE opined that Plaintiff could perform two sedentary jobs in the national economy, "Call Out Operator" and "Surveillance Systems Monitor."  (R. 57).  Defendant also notes that the ALJ posed an additional question to the VE restricting the claimant from writing more than three percent of the time and from any keyboarding or typing.  (R. 57-58).  Even under such additional restrictions, the VE opined that claimant could perform the Surveillance Systems Monitor Position.   (R. 58).

After careful review of the record, I tend to agree with Defendant that the ALJ included limitations in his hypothetical question and RFC finding that arguably correlate with Dr. Begley's feeling and handling limitations.   Without further explanation from the ALJ, however, I cannot be certain that this is the case.  Accordingly, on remand, the ALJ shall specifically address Dr. Begley's feeling and handling limitations and clarify whether he accepted those limitations (and if not, why not); whether he considered the hypothetical question and RFC finding to contain equivalent limitations; and/or whether additional vocational expert testimony is necessary.

For these reasons, the case is remanded for further consideration of Dr. Begley's "feeling and handling" limitation as set forth herein.

### D. WHETHER THE ALJ FAILED TO ADDRESS A DISCREPANCY BETWEEN THE DICTIONARY OF OCCUPATIONAL TITLES DESCRIPTION OF THE JOBS THE VE LISTED AND PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY AS FOUND BY THE JUDGE

Plaintiff argues that the ALJ erroneously ignored a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles' description of the jobs the VE found that

Plaintiff could perform. Pl.'s Br. (Docket No. 12) at 9-11. Specifically, Plaintiff argues that although the ALJ limited him to "simple, routine jobs," the two jobs that the VE identified – Call-Out Operator and Surveillance-System Monitor – were not simple and routine. Plaintiff contends that the DOT assigns these jobs a "Reasoning Level" of 3,[3] and, therefore, the jobs exceed the capability of someone who is limited to simple, routine jobs. Id. at 10. Plaintiff cites Social Security Ruling 00-4p for the proposition that when there is an unresolved conflict between the VE's testimony and the DOT, the ALJ must derive a reasonable explanation of the conflict before relying on vocational expert evidence. Id. at 10-11.[4]

After careful review, I agree with Defendant that Plaintiff's argument is without merit. As an initial matter, the ALJ directly asked the VE at the hearing whether his testimony was consistent with the DOT, and the VE said yes. (R. 59). Neither Plaintiff nor his counsel challenged the VE on this point during the hearing or otherwise identified any apparent inconsistency between the VE's testimony and the DOT. Thus, the ALJ was entitled to rely upon the VE's testimony. See Green v. Astrue, Civil Action No. 10-468, 2010 WL 4929082, at *6 (W.D. Pa. Nov. 30, 2010) (Ambrose, J.); Simpson v. Astrue, Civ. A. No. 10-1874, 2011 WL 1883124, at *7 (E.D. Pa. May 17, 2011). Moreover, and in any event, numerous courts have found that there is no *per se* conflict between a reasoning level 3 job and the limitation to simple, routine tasks/unskilled work. See, e.g., Simpson, 2011 WL 1883124, at *7 (citing Terry v. Astrue, 580 F.3d 471, 474-76 (7th Cir. 2009)); Thacker v. Astrue, Civ. No. 3:11CV246-GCM-DSC, 2011

---

[3] A reasoning level of 3 requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." Simpson v. Astrue, Civ. A. No. 10-1874, 2011 WL 1883124, at *6 (E.D. Pa. May 17, 2011). The two jobs the VE identified also have an SVP ("specific vocational preparation") of two, *i.e.*, they are "unskilled." Def.'s Br. (Docket No. 14) at 14-15.

[4] Under SSR 00-4p, the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable explanation. See SSR 00-4p; Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009).

WL 7154218, at *4 (W.D.N.C. 2011) (citing additional cases); Def.'s Br. at 15-17 and cases cited therein.  In this case, I do not find any obvious conflict between the VE's testimony and the DOT such that the ALJ should have pursued the question further.

For all of these reasons, I reject Plaintiff's argument that the ALJ violated SSR 00-4p or otherwise erroneously disregarded a conflict between the VE's testimony and the DOT.

### III. CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options.  It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration.  42 U.S.C. § 405(g) (sentence four).  In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because he failed to address Plaintiff's IQ scores or to determine whether Plaintiff met Listing 12.05(C).  The ALJ also failed to address adequately his position regarding the "feeling and handling" limitations set forth in Dr. Begley's post-hearing consultative examination.  The case therefore is remanded for further consideration in light of this Opinion.  For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD CLAWSON,        )
                        )
    Plaintiff,           )
                        )
    vs.                  )        Civil Action No.   11-294
                        )
MICHAEL J. ASTRUE, Commissioner of  )
Social Security,        )
                        )
    Defendant.           )
                        )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 15th day of January, 2013, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 11) is GRANTED and the matter is REMANDED for further proceedings consistent with the Opinion attached hereto.  Defendant's Motion for Summary Judgment (Docket No. 13) is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge